Clay **FULLER** d/b/a Fuller Promotions, Plaintiff-Appellee,

v.

Arlo **GUTHRIE**, Sutton Artist Corporation, and Route 183 Productions, Inc., Defendants-Appellants.

No. 278 Docket 77–7316.

United States Court of Appeals, Second Circuit.

Argued Nov. 7, 1977.

Decided Nov. 18, 1977.

Spencer R. Knapp, Burlington, Vt. (Dinse, Allen & Erdmann, Burlington, Vt., of counsel), for defendants-appellants.

John P. Maley, Burlington, Vt. (Sylvester & Maley, Burlington, Vt., of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

This appeal stems from a diversity action brought by Clay Fuller, the promoter of a musical concert that took place in Burlington, Vermont, on the evening of October 31, 1976. One of the appellants, Arlo Guthrie, a well-known folksinger, was the principal performer that evening. The other appellants, Route 183 Productions, Inc. and Sutton Artists Corporation, are, respectively, the corporate organization that furnished Guthrie's services and the booking agency through which Fuller obtained Guthrie. The allegations of Fuller's complaint derive from the events of that evening. The first count asserted that the appellants breached the contract providing for Guthrie's musical services because he failed to complete his performance. The second count contended that Guthrie slandered Fuller during the course of the concert by stating to the audience:

> Everyone here is not getting paid . . . the cops, the electricians, us. . . . Fuller has ripped you off.

In their answer, appellants generally denied the allegations of the complaint and, in addition, raised as an affirmative defense, the arbitration clause contained in the contract for the concert, a form document prepared by the American Federation of Musicians of the United States and Canada. The pertinent paragraph provides that "the parties will submit every claim, dispute, controversy, or difference involving the musical services arising out of or connected with" the contract to an arbitration board composed by the American Federation of Musicians. Appellants then moved, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, to stay the federal proceedings pending arbitration of both claims.

Judge Coffrin heard argument on appellants' motion, and ordered the parties to proceed to arbitration on the first count of Fuller's complaint. The district court refused, however, to stay the proceedings pending arbitration of the slander claim, and that denial is the basis for this appeal.

The starting point for our discussion is § 3 of the Federal Arbitration Act which provides:

> If any suit or proceedings be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . .

■ Pursuant to this Congressional mandate, it is well settled that standard

principles of contractual construction govern on the issue whether a party is required to arbitrate. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Interocean Ship Co. v. National Ship Trading Co.*, 523 F.2d 527, 539 (2d Cir. 1975). In applying these principles to the arbitration clause in this case, we agree with the appellee that it would stretch the meaning of "musical services" beyond any reasonable definition to suggest that the slander claim falls within it. Although the agreement to arbitrate was undoubtedly intended to cover disputes arising from the character of Guthrie's performance and his payment for it, it is highly unlikely that the parties could have foreseen, no less intended, to provide a forum for wholly unexpected tortious behavior. As we noted in *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Union*, 359 F.2d 598, 603 (2d Cir. 1966):

> absent a clear, explicit statement . . in the contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the [parties] did not intend to withdraw such disputes from judicial authority.

Our decision in *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967) is not, as appellant would suggest, to the contrary. There, we held only that a party could not remove a claim from within the intended scope of an arbitration clause merely by casting it in tort where the claim itself clearly alleged a breach of contract.

Nor are we persuaded that the slander claim raised precisely the same questions as the breach of contract claim, and that this congruence compels their joint determination. While proof of the truth or falsity of Guthrie's alleged statement that he was not being paid (concededly relevant to the slander claim) would be pertinent to the asserted breach of contract, the two counts of Guthrie's complaint are separate and distinct. For example, close examination of the allegedly slanderous remarks reveals that they implicated others than the immediate parties to the contract. He referred to "cops," "electricians," "audience." The breach of contract claim would not reach the truth or falsity of these remarks.

■ We reach our result cognizant of the federal policy favoring arbitration, and accept the standard rule of construction that arbitration agreements are to be liberally construed. See, e. g. *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382, 385 (2d Cir. 1961), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1962). But federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope. A decision to arbitrate must be consciously made, for, as we have recently noted,

> by agreeing to submit disputes to arbitration, a party relinquishes his courtroom rights, including that to subpoena witnesses, in favor of arbitration with all its well-known advantages and drawbacks. *Parsons and Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969 (2d Cir. 1974).

We do not believe that the arbitration clause here evinces such a conscious decision. Accordingly, we affirm the order of the district court.