807 P.2d 526

**Robert DUSOLD, Plaintiff–Appellant,**

**v.**

**PORTA–JOHN CORPORATION, a Michigan corporation, Defendant–Appellee.**

**No. 1 CA–CV 88–517.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 11, 1990.

Reconsideration Denied Dec. 20, 1990.

Review Denied April 9, 1991.

DeeAn Gillespie and Teilborg, Sanders & Parks by Bradley R. Jardine and Rick N. Bryson, Phoenix, for plaintiff-appellant.

Chandler, Tullar, Udall & Redhair by S. Jon Trachta, Tucson, for defendant-appellee.

## OPINION

JACOBSON, Judge.

Plaintiff/appellant Robert Dusold (Dusold) filed a negligence and products liability action against defendant/appellee Porta–John Corporation (Porta–John) and others, alleging that he suffered personal injuries from chemicals supplied by Porta–John. Porta–John moved to dismiss the complaint on the ground that an arbitration clause in the parties' contract divested the trial court of subject matter jurisdiction over the action.

## FACTS AND PROCEDURAL BACKGROUND

In 1985, Dusold began servicing and cleaning Porta–John's portable toilets in Phoenix under a licensing agreement. The Service Contract Agreement (contract), drafted by Porta–John, contained a provision requiring arbitration in Michigan of "any controversy or claim arising out of, or relating to this agreement, or the breach thereof."

Pursuant to this contract, Porta–John supplied Dusold with all chemicals required to clean and service the toilets. After several months, Dusold allegedly suffered injury from exposure to these chemicals. On December 31, 1986, Dusold filed a complaint against Porta–John and others,[1] alleging that Porta–John failed to warn him of the dangerous and toxic nature of these chemicals and also failed to provide him with adequate instructions for their safe use.

Porta–John moved to dismiss Dusold's complaint pursuant to Rule 12(b)(1) and (6), Arizona Rules of Civil Procedure, contending that, as a result of the arbitration provision, arbitration in Michigan was Dusold's exclusive remedy for his personal injury tort claim and that, therefore, Dusold's complaint failed to state a claim upon which relief could be granted by an Arizona state court. In that same motion, Porta–John asked for an order compelling arbitration and staying judicial proceedings pursuant to A.R.S. § 12–1502.

In its minute entry following the hearing on Porta–John's motion, the trial court expressed "some doubts about the fairness of compelling an Arizona Plaintiff in a multi-defendant tort case to arbitrate in Michigan his claim against the primary defendant." Nevertheless, the court found that Dusold's claims "ar[o]se out of or relat[ed] to ... his agreement with Defendant Porta–John; they [were] for personal injuries Plaintiff received while performing on that agreement." The court further found that both statute and case law required that all issues be resolved in favor of arbitration. The court granted Porta–John's motion, entered judgment dismissing all claims against Porta–John, and ordered the parties to arbitrate those claims according to the terms of their contract. The judgment, which had been prepared and submitted by Porta–John and which conformed to the court's minute entry order, contained Rule 54(b) language that the court found "no just reason for delay in entry of the judgment of dismissal as to defendant Porta–John." *See* Rule 54(b), Arizona Rules of Civil Procedure.

Dusold timely appealed from that judgment, claiming:

(1) that the arbitration clause in the contract applied only to contract disputes and not to personal injury tort claims;

(2) that even if the clause was found to be broad enough to include personal injury claims, application of it to Dusold's personal injury claim abrogated his

---

1. Other defendants were Enzymes of America, Inc.; Fred and Carolyn Ziegenbein, d/b/a Star Sanitation; ZED Services, Inc.; Celanese Chemical Co., Inc.; John and Jane Does 1–10; ABC partnerships 1–10; and XYZ corporations 1–10. Porta–John's motion for dismissal did not involve the claims against these parties.

constitutional right to recover damages in a trial by jury in Arizona; and

(3) that, even if the arbitration agreement was valid as to Dusold's personal injury claims and did not violate his constitutional rights, then either (a) the superior court did not have power to compel arbitration in another state, or (b) it was unreasonable in this case, and/or against the public policy of Arizona, to require arbitration in Michigan.

On January 17, 1989, along with its answering brief, Porta–John filed a motion to dismiss the appeal on the ground that an order compelling arbitration is a nonappealable, interlocutory order under *Roeder v. Huish*, 105 Ariz. 508, 467 P.2d 902 (1970). This court ordered postponement of Porta–John's jurisdictional argument until disposition on the merits. We first address the jurisdictional question.

## JURISDICTION

■ Porta–John asserts that an order of the trial court compelling arbitration is interlocutory and therefore not appealable pursuant to A.R.S. § 12–2101.01 [2] and *Roeder v. Huish*.

Dusold argues that the order challenged here resulted in a judgment dismissing all claims against Porta–John, while the order in *Roeder* was simply an order granting the defendant's application for arbitration and for stay of proceedings pending arbitration, and, thus, *Roeder* is distinguishable. Further, Dusold points out, the court specifically included Rule 54(b) language in its judgment and left no claims pending before the trial court as to Porta–John. The judgment, submitted by Porta–John and adopted in full by the court, states in pertinent part:

1. All claims against defendant Porta–John corporation are dismissed and defendant Porta–John is dismissed from this action.

2. The parties are ordered to arbitrate those claims in the State of Michigan according to the terms of their contract.

3. There is no just reason for delay in entry of judgment as to defendant Porta–John.

Porta–John argues that an order to arbitrate is by its nature interlocutory, and the trial court cannot transform it into a final order simply by incorporating it within a final judgment. Thus, Porta–John asks this court to either dismiss the appeal because of the intrinsically interlocutory nature of the arbitration order or to remand to the trial court for issuance of an order compelling arbitration and staying proceedings pending the outcome of arbitration.

We begin our analysis with a comparison of the proceedings here with those in *Roeder*. In both cases, the parties had entered a contract containing a standard arbitration clause. 105 Ariz. at 509, 467 P.2d at 903. In *Roeder*, the defendants had filed an application requesting the court to compel arbitration pursuant to the terms in their contract. *Id.* The plaintiffs objected. The trial court granted the defendants' application and ordered the parties to arbitrate. Prior to arbitration, the plaintiffs appealed from the trial court's order. The court of appeals dismissed the appeal on the ground that "the order which is the subject of the appeal is an interlocutory order, not expressly made subject to an appeal and, therefore, is not an appealable order." *Id.* On petition for review, the Arizona Supreme Court upheld the court's dismissal of the appeal and further held that an objecting party could "raise the issue of arbitra-

**2.** A.R.S. § 12–2101.01 provides:

A. An appeal may be taken from:

1. An order denying an application to compel arbitration made under the terms of § 12–1502;

2. An order granting an application to stay arbitration made under the terms of subsection B of § 12–1502;

3. An order denying confirmation of an award;

4. An order modifying or correcting an award;

5. An order vacating an award without directing a rehearing; or

6. A judgment or decree entered pursuant to the provisions of article 1, chapter 9, of this title.

(Footnote omitted.)

bility ... by objecting to the trial court's confirmation of arbitration award." *Id.* at 510, 467 P.2d at 904.

Initially, we point out that this case, unlike *Roeder*, involves a motion to dismiss claims pursuant to Rule 12(b)(1) and (6), not simply an application for an order to compel arbitration. The relief Porta–John sought was granted—the trial court dismissed all claims against Porta–John, and included Rule 54(b) language indicating finality. Such a judgment of dismissal, under either Rule 12(b)(1) or (6), is a final, appealable order under A.R.S. § 12–2101(B). *See King v. Superior Court*, 138 Ariz. 147, 150 n. 3, 673 P.2d 787, 790 n. 3 (1983). We have previously addressed the issue whether arbitration was properly compelled in the context of an appeal from dismissal of a claim pursuant to Rule 12(b)(1) and (6) that included Rule 54(b) language. *See Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App. 1983). This form of final, appealable judgment was not at issue in *Roeder*.

What further distinguishes *Roeder* from the present case is that Porta–John seeks arbitration in Michigan, and argued to the trial court that Michigan arbitration would divest Arizona of subject matter jurisdiction. We need not determine the merits of that contention except to note that we would have jurisdiction over an appeal from such an order as affecting a substantial right which "in effect determines the action and prevents judgment from which an appeal might be taken." A.R.S. § 12–2101(D). Porta–John fails to show us how, if this order is to be considered interlocutory and not appealable, Dusold would ever be able to obtain appellate relief over the "final" judgment in this court. Under Porta–John's own reasoning, therefore, the order would be appealable even if interlocutory. *See* A.R.S. § 12–2101(D).

Because we have jurisdiction to consider at least the dismissal and jurisdictional aspects of the trial court's order (transfer of arbitration to Michigan), we have jurisdiction over this appeal. Furthermore, any intermediate orders incorporated into that judgment are also reviewable once subject matter jurisdiction has been acquired. *See State v. Rodriguez*, 163 Ariz. 391, 788 P.2d 124 (1990). Consequently, we have jurisdiction to consider the applicability of the arbitration clause to Dusold's negligence and products liability claims.

## SCOPE OF THE ARBITRATION CLAUSE

Dusold's main argument is that the arbitration clause in his contract with Porta–John does not subject him to arbitration in Michigan over his tort action in Arizona for negligence and products liability against Porta–John. The arbitration clause at issue here provided as follows:

Any controversy or claim arising out of, or relating to this agreement, or the breach thereof, shall be settled by arbitration in the state of Michigan where PORTA–JOHN conducts its principal business, in accordance with the rules then pertaining of the American Arbitration Association, and judgment upon the award rendered may be entered by any Court having jurisdiction thereof.

The question whether a tort claim arising between parties who have a contractual relationship requiring that a claim "arising out of or relating to" an agreement or a breach of an agreement be subjected to arbitration is not without difficulty. The difficulty, in part, arises from the judicial preference to view arbitration as both time and money efficient as compared to judicial determinations; courts thus generally favor arbitration as the preferred mode of resolution. For this reason, courts have adopted somewhat broad statements of public policy regarding arbitration. One, for example, is that espoused in *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Association*, 12 Ariz.App. 13, 467 P.2d 88 (1970), which held all disputes between contracting parties should be subjected to arbitration unless it can be said with "positive assurance" that the arbitration clause does not cover the dispute. *See also Beaver Coaches v. Revels Nationwide R.V. Sales, Inc.*, 543 So.2d 359 (Fla.App. 1989) (only *most forceful evidence* of purpose to exclude claim from arbitration can

prevail over broad contractual arbitration clause); *National R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756 (D.C. Cir.1988) (courts will compel arbitration unless party can make a *clear showing* that arbitration was not intended); *Popper v. Monroe*, 673 F.Supp. 1228 (S.D.N.Y.1987) (a standard arbitration clause is *forceful evidence* that parties intended to arbitrate a broad range of disputes).

These broad statements of judicial policy relating to arbitration serve the stated purpose of promoting efficiency in time and money when a dispute between parties is contractual in nature. However, when a dispute is not contractual but tortious, courts have shown an increasing reluctance to subject personal injury claims to contractual restraints on judicial resolution. This reluctance has taken some courts to the other extreme of limiting arbitration clauses where tort claims are concerned:

> [A]bsent a clear explicit statement ... in a contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the parties did not intend to withdraw such disputes from judicial authority.

*Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir.1977), quoting *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Emp. Union*, 359 F.2d 598, 603 (2d Cir.1966), *cert. denied*, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966).

Such policy statements recognize that only those disputes that the parties could reasonably intend to be submitted to arbitration should be encompassed within their contractual agreement. *Clarke v. Asarco, Inc.*, 123 Ariz. 587, 589, 601 P.2d 587, 589 (1979) (parties may be required to arbitrate only that "which by clear language they have agreed to arbitrate"). Thus, these courts implicitly have assumed that, unless the parties have explicitly included tort actions within the scope of their arbitration clauses, they must not have intended such claims to be subject to contractually-imposed resolution. Similarly, courts do not allow parties to escape arbitration clauses by framing contractual disputes as tort

claims. *See, e.g., Tri–City Jewish Center v. Blass Riddick Chilcote*, 159 Ill.App.3d 436, 111 Ill.Dec. 247, 512 N.E.2d 363 (1987) (where a contract between an architect and builder required arbitration of disputes arising out of or related to their contract, the builder could not avoid arbitration by casting his claim for nonpayment of fees as "professional negligence" of the architect).

Moreover, courts also recognize that the expertise that particular arbitrators may bring to a contract dispute, which increases the acceptance of the arbitrator's award, is lacking when the claim is for personal injuries. *See Old Dutch Farms, Inc.*

In our opinion, the better-reasoned cases start with the premise that, in order for the dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself. *Id.* The relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties. *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir.1984). *See also McMahon v. RMS Electronics, Inc.*, 618 F.Supp. 189 (S.D.N.Y.1985) (where tort claim does not require an interpretation of the underlying contract, no arbitration of that claim is required); *Popper*, 673 F.Supp. at 1228 (if defamatory statements have no material relationship to contractual relationship, no arbitration required). If such a connection to the contract is not present, tort claims between the parties could not reasonably be intended to have been subject to arbitration within the meaning of an arbitration clause requiring this method of resolution only for claims "arising out of or related to" the contract.

This reasoning is supported by the analysis employed by Arizona courts in differentiating tort claims "arising out of contract" from tort claims that arise solely out of legal duties imposed by law, for the purpose of awarding attorneys' fees pursuant to A.R.S. § 12–341.01(A). *See, e.g., Bar-*

*mat v. John and Jane Doe Partners A–D,* 155 Ariz. 519, 747 P.2d 1218 (1987); *Lewin v. Miller Wagner & Co., Ltd.,* 151 Ariz. 29, 725 P.2d 736 (App.1986). If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *Barmat,* 155 Ariz. at 523, 747 P.2d at 1222. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. *Id.* Therefore, a contractually-imposed arbitration requirement like the one at issue here would not apply to such a claim.

Applying that rationale to this litigation, we note that Dusold alleged that his personal injuries occurred because Porta–John failed to warn him of the dangerous and toxic nature of its chemicals and failed to properly instruct him as to their safe use. Dusold does not contend that these duties to warn or instruct arose out of any contractual obligation of Porta–John under the licensing agreement between them. Rather, Dusold alleges that the duties to warn or instruct arose solely from Porta–John's obligations as a supplier of hazardous materials and such a supplier's duties are controlled by common law tort principles of products liability. The Arizona Supreme Court has recognized that when an injured buyer maintains a tort action on a theory of strict liability, "the essential nature of the action sounds in tort," even if the parties' relationship was formed by a contract, because "the liability of the seller would exist even without a contract." *Barmat,* 155 Ariz. at 523 n. 1, 747 P.2d at 1222 n. 1. According to Dusold, the duties involved here would be owed to him by Porta–John even if he were a contractual stranger. We agree. In our opinion, the resolution of this dispute can take place without any reference to or construction of the contract

between the parties. As such, it is not subject to the arbitration clause in the contract requiring arbitration in Michigan.

Because we hold that the arbitration clause does not apply to Dusold's personal injury tort claim, we need not address the constitutional issue or his contention that requiring arbitration in Michigan is unreasonable.

Judgment of the trial court is reversed and the matter is remanded for reinstatement of Dusold's complaint.

GRANT, C.J., and LANKFORD, J., concur.